In re READING HAT MFG. CO.

(District Court, E. D. Pennsylvania.   February 1, 1917.)

No. 4982.

BANKRUPTCY ☞268—TRUSTEE—SALE OF PROPERTY—AGREEMENT—TAXES.

Where the buyer of mill machinery, which was covered by the mortgage on the mill, to protect the bankrupt estate of the mortgagor, agreed with the receiver that the mill, without the machinery, would sell for at least $7,000, or that he would make up the deficit, which meant that the property should bring that amount free of incumbrances, so that the purchaser would have to pay the unaccrued taxes for the year of the sale in addition to his bid, and the buyer of the machinery himself purchased the mill for $7,200, which was more than the amount of the agreed purchase price, with unaccrued taxes, he is not liable for the amount of the taxes in addition to his bid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. ☞268.]

In Bankruptcy.   In the matter of the Reading Hat Manufacturing Company.   On petition to review an order of the referee requiring petitioner to pay the unaccrued taxes on land belonging to the estate under an agreement.   Petition allowed, order revoked, and cause remitted, with instructions to enter an order in accordance with the opinion.

See, also, 224 Fed. 786.

Thomas O. Peirce, of Philadelphia, Pa., for petitioner.

Bertram D. Rearick, of Philadelphia, Pa., for trustee.

DICKINSON, District Judge.   The present status of this case, out of which the question involved arises, is as follows:

There was property of the estate, consisting of land, a mill, and the machinery contents of the latter.   There was a mortgage of the mill property, which the mortgagee claimed to be a lien upon the whole plant, including machinery.   It was deemed by the receiver desirable to sell the machinery and what would otherwise be personal property separate from the land and buildings, and to sell the former as personalty.   The practical effect of thus stripping the mill of its machinery might be to so depreciate its value as that the real estate would not realize sufficient money to pay the mortgage.   The security of the mortgage would thus be impaired, and the result might be that the mortgagee would present a claim as a general creditor for such part of the mortgage debt as the proceeds of the real estate failed to reach. To give assurance against this consequence, and to forestall any objection by the mortgagee to a sale of the machinery, the purchaser of the latter was required to give, in addition to the purchase price of the personalty, his agreement that the real estate would bring at least the sum of $7,000.   The petitioner entered into this agreement and became the purchaser of the personal property.   The real estate was then exposed for sale and brought the sum of $7,200.   The agreement was made

by a man by the name of Sylvester, but he is found by the referee to be nothing more or less than a name for the petitioner.

The referee was not only fully justified in making this finding, but it was conceded at the argument that the fact was as found. To secure the carrying out of his agreement, the petitioner deposited the sum of $1,000, which was to be returned to him if his agreement was complied with, but if he fell short in performance, then the receiver was to retain so much of the $1,000 as would put the estate in the same position as if the petitioner had so complied.

When settlement came to be made for the real estate, the trustee (who had succeeded the receiver) demanded, in addition to the price of $7,200 bid, the sum of $130.44 which represented the unaccrued taxes for the current year. The basis of this claim by the trustee was that he asserted the agreement between the receiver and the petitioner to have been that the petitioner, in addition to the price bid for the real estate, would assume and pay the current year's taxes, less the apportionment, to the day of sale. The terms of sale, as made by the referee, sold the property clear of all incumbrances, including the whole year's current taxes, and thereby operated as a divestiture of the lien of the taxes and threw the payment of the same upon the fund. The petitioner denied such to be the meaning of his agreement and refused the additional payment. It was finally arranged that the amount involved should be retained by the trustee, subject to the determination of the question between them. This determination is now being made. It turns upon the proper construction of the agreement. The construction of the agreement, as urged by the petitioner, is that he merely agreed that the real estate should sell for at least $7,000. When, therefore, it was sold for $7,200, his agreement was fully met and discharged, and is to be considered as if wiped out.

The referee has refused to accept of this construction. In this we think he is right. The view taken by counsel for petitioner is at first sight clear enough. To say that a property shall bring $7,000 seems to be a sufficiently definite statement. It develops, however, that it is nothing until the meaning of such a price is defined. For illustration, does it mean $7,000 clear of all incumbrances, or subject to them? The parties to this agreement defined $7,000 as meaning $7,000 clear of all incumbrances, with taxes, however, apportioned to the day of sale, thereby meaning $7,000 plus the unaccrued taxes, which the purchaser was to pay in addition to his bid. If this were all the agreement contained, this construction would still sustain the claim of the petitioner, because the property did bring the $7,000 and the amount of taxes involved in addition.

Counsel for the trustee met this view by the assertion that there are two agreements in the agreement referred to. One relates to the contingency of some one else than the purchaser buying the property, in which event the petitioner is relieved of his contract if the purchase price exceeds $7,000. The other relates to the contingency of the petitioner himself becoming the purchaser, in which event it is asserted the petitioner, as purchaser, agreed to pay the unaccrued taxes in addition to the price bid for the real estate. As the petitioner did buy

the real estate, this latter agreement is the controlling one. This is the construction put upon the agreement by the referee.

The argument in support of the view accepted by the referee is pressed with earnestness and with force by counsel for the trustee. It may be thus presented, prefaced by the admission that there is no obligation upon the petitioner to pay the apportioned taxes unless he so agreed; but it is asserted that such undertaking is found in the agreement of January 7, 1914. The argument is that he agreed to pay these taxes if he bought the property, and, as he did buy the property, his obligation to pay becomes complete.

There is something alluring in the logic of this mode of statement, but the argument thereby presented lacks convincing power, because it ignores the common sense of the situation in overlooking the palpable truth that the substantial purpose and scope of the agreement was to assure to the estate that the property would bring $7,000 plus these taxes. When, therefore, this object of the agreement was attained, the agreement was functus officio. The argument is answered by a denial of the first premise. The petitioner did not agree to pay more than his bid "if he bought the property," but only if he bought the property for less than $7,000 and the apportioned taxes. Under the view of the trustee the petitioner would be obliged to pay $7,200 and the taxes, and this he never agreed to pay. There was, it is true, the possibility that the estate might receive more, because the assurance was that it was to receive at least that much. This possibility was inherent and necessarily so. It is conceded that the estate is entitled to receive $7,200, less taxes, or $7,039.56. It, therefore, does receive at least $7,000, because it receives more. The petitioner retorts upon the trustee with his statement of the logic of his view. He likewise prefaces his statement with the proposition that he is not obliged to pay this $130.44 (representing the unaccrued taxes) unless he has so agreed, and that the only agreements into which he had entered are that of January 7, 1914 and his bid of $7,200 at the sale. There may be in the agreement of January 7, 1914, his undertaking to pay the $130.44, but there is no undertaking to pay the $7,200. By his bid he agreed to pay the $7,200, but he did not agree to pay the $130.44 in addition because that was included in his bid. It therefore follows that the only way in which an agreement to pay both can be manufactured is to make up a patchwork sort of contract, by taking an obligation to pay the $130.44 out of the agreement of January 7, 1914, and an agreement to pay the $7,200 out of his bid contract, and by piecing the two together make a contract to pay both. The petitioner denies a contract thus made to be his contract. The substantial agreement of the parties was this. It was anticipated that a sale would be made (such as in fact was afterwards made) clear of the taxes for the whole year. It was anticipated that the petitioner or some one else would be the purchaser. It was then agreed that as between the parties what the estate received should be at least $7,000, figured on the basis of the property being clear, but the purchaser paying the unaccrued taxes. In other words, the property considered as sold clear of all incumbrances should bring $7,000 plus the future part of the

current year taxes, all of which taxes the estate would be obliged to pay, because the property was sold clear, or, in still other words, the property should· at least bring $7,130.44. If the estate did· not receive that much, the petitioner was to make up the deficit. If it did receive at least that much, the agreement was met, and the petitioner quit of his contract. The estate in fact received $7,200, or $7,069.56 in addition to the $130.44, the apportioned taxes.

Our conclusion is that the petitioner is not obliged to pay a further $130.44 to the estate, and is entitled to the return to him of the sum deposited for the purpose.

The petition for review is allowed, the order of the referee revoked, and the cause remitted, with instructions to make an order in accordance herewith.

---

⬥➣For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes